IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Michael A. Wilhelm, etc., | Case No. 3:04 CV 7562 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| George Clemens, III, etc., et al., | |
| Defendants. | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 13), to which Plaintiff has filed a Memorandum in Opposition (Doc. No. 30) and Defendants have filed a Reply (Doc. No. 38). The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

### BACKGROUND

On September 12, 2002, Village of Antwerp police officer Victoria Clemens approached four teenage boys (Michael Wilhelm, Jr., Robbie Phlipot, Nathan Hellberg, and Bryan Krohn) in the Village park. Officer Clemens stated that she smelled burnt marijuana and questioned the boys (V. Clemens Depo. at p. 12). While initially denying any wrongdoing, the boys later admitted they had been smoking marijuana (Phlipot Depo. at p. 11; V. Clemens Depo. at 13; Hellberg Depo. at pp. 8-9; Wilhelm Depo. at pp. 28-29).

Officer Clemens asked the boys if they had any more marijuana, and Bryan Krohn indicated he had a pipe and some rolling papers, which he handed to her (V. Clemens Depo. at p. 13). Officer George Clemens then arrived in the park, questioned the boys some more, and asked them to ride their bicycles to the police station (*Id.*; Wilhelm Depo. at p. 31). Robbie Phlipot testified that George Clemens patted the boys down in the park as well (Phlipot Depo. at p. 12). George Clemens followed the boys to the station in his cruiser (Wilhelm Depo. at p. 31).

At the station, the boys were instructed to write statements and then were separated for questioning. Michael and Robbie both testified they did not receive *Miranda* warnings until after they had written their statements (*Id.* at p. 33; Phlipot Depo. at p. 13). Each boy was questioned regarding the source of the marijuana. Afterwards, Michael was told to wait in the hallway. George Clemens claims Michael kicked his chair back against the wall, left the room, and slammed the door loudly (G. Clemens Depo. at p. 79). Michael acknowledges the door slammed, but claims he did not slam it on purpose (Wilhelm Depo. at p. 43). George Clemens contends that as he approached Michael, who appeared "emotionally upset" and was "huffing and puffing," Michael responded by cursing at him (G. Clemens Depo. at p. 79). Michael denies cursing, arguing, or pushing the chair (Wilhelm Depo. at pp. 48, 53).

At this point, George Clemens decided to secure Michael for the safety of himself and others (G. Clemens Depo. at p. 80). The parties offer vastly different versions of what happened next. George Clemens contends he first asked Michael to put his hands on the wall, moved his legs apart with his foot, patted him down, removed his hat, and placed him in handcuffs (*Id.* at pp. 79-80). Michael, on the other hand, claims that Clemens "threw him against the wall," kicked his ankles apart, pulled out his pockets, and took off his shoes (Wilhelm Depo. at pp.44-47). Next, Michael claims Clemens "ripped" his hat off, snapping his neck backwards and causing him to cry (*Id.* at pp. 47-48).

2

Neither party disputes that, since early childhood, Michael has suffered from chronic neck problems caused by a congenital cervical spine defect. These problems were aggravated in January 2002, nine months before the incident giving rise to this case, when Michael had a snowboarding accident. On January 24, 2002, Dr. Jeffrey Kachmann performed an "occipital-cervical decompression" surgery (Seiber Aff. at ¶5). As discussed later, Plaintiff contends that George Clemens had knowledge of Michael's medical problems prior to the September 12, 2002 incident, while Clemens denies having such knowledge.

Michael contends that the evening after the incident, the left side of his body felt numb and tingly (Wilhelm Depo. at p. 55). The next day, he contends he began to experience trouble swallowing with impaired speech (*Id*. at p. 56). Further, Michael contends these conditions have remained permanent to date. *Id*.

On September 10, 2004, Plaintiff Michael Wilhelm, Sr., individually and as father/next friend of Michael Wilhelm, Jr., filed this action against Defendant Village of Antwerp and Defendants George Clemens, Victoria Clemens, and Joyce Carr, individually and in their official capacities. Plaintiff has alleged the following claims: (1) various violations of the Fourth and Fourteenth Amendments of the U.S. Constitution; (2) false imprisonment; (3) assault and battery; and (4) various violations of Section 14, Article I of the Ohio Constitution. Defendants have moved for summary judgment on each of these counts. For the reasons stated below, Defendants' Motion is granted in part and denied in part.

## DISCUSSION

### Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed.2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp.2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## Plaintiff's Federal Constitutional Claims

Plaintiff has alleged that Defendants violated several federal constitutional rights under the protections of the Fourth and Fourteenth Amendments. Defendants have moved for summary judgment on each of these claims, and they will be addressed in the order raised.

**A.     Overview of Section 1983**

42 U.S.C. §1983 provides a remedy for violations of the U.S. Constitution by state actors. The statute provides in relevant part:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

To establish a claim against a public official under §1983, Plaintiff must prove that the conduct complained of was: (1) committed by a person acting under the color of state law; which (2) deprived him of a federally protected constitutional or statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed.2d 572 (1980); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001); *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000).

There is no dispute that Defendants were acting under color of state law when engaging in the conduct that is the subject of this lawsuit. Accordingly, the Court will address the issue of whether a federally protected constitutional or statutory right has been violated.

**B.     Claims Against Individual Defendants**

    **1.     Qualified Immunity**

Qualified immunity is an affirmative defense that shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed.2d 396 (1982). In *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed.2d 272 (2001), the Supreme Court made clear that "in a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in a proper sequence." The Sixth Circuit has adopted a three-step inquiry for determining an appropriate defense of qualified immunity:

6

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*)); *see also Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 900-01 (6th Cir. 2004). "If the answer to all three questions is 'yes,' qualified immunity is not proper." *Champion*, 380 F.3d at 901.

While the issue of whether a defendant is entitled to qualified immunity is usually a purely legal question to be determined by the court, summary judgment is inappropriate where "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994) (citing *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989)). In other words, if, under Plaintiff's version of the disputed facts, Defendants are not entitled to qualified immunity, a genuine issue of material fact exists and the Court may not grant summary judgment for Defendants. The Court, therefore, bases its qualified immunity inquiry upon the facts taken in the light most favorable to Plaintiff, drawing all inferences in Plaintiff's favor. *Champion*, 380 F.3d at 900.

**2.     Illegal Detention and Search**

Plaintiff first challenges the detention and search of the boys in the Village park. Specifically, Plaintiff claims that Officer Victoria Clemens violated Michael's Fourth Amendment right to be free from unreasonable search and seizure when she searched the boys in the park.

7

Victoria Clemens testified that as she approached the boys she smelled the odor of burnt marijuana, and notified the boys of that fact (V. Clemens Depo. at pp.12-13). Further, she testified that she observed a "roach" on the ground in front of Michael which was warm to the touch.[1] *Id*. at p.13. In the Sixth Circuit, the odor of marijuana alone is sufficient to establish probable cause that marijuana is present, and justifies a warrantless search. *United States v. $118,170.00 in United States Currency*, 69 Fed. Appx. 714, 716 (6th Cir. 2003) (citing *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993)). The same is true under Ohio law. *See State v. Moore*, 90 Ohio St.3d 47, 53, 734 N.E.2d 804, 809 (2000).

Plaintiff contends that a genuine issue of material fact exists as to whether Victoria Clemens actually smelled marijuana. In support, he offers the testimony of Robbie Phlipot, who denied seeing anyone smoke marijuana prior to the arrival of Victoria Clemens (Robbie Phlipot Depo. at p. 10). Further, Plaintiff points to Nathan Hellberg's testimony that ten or fifteen minutes had passed since the boys smoked the joint (Nathan Hellberg Depo. at p. 9). This evidence does nothing to rebut Victoria Clemens's contention that she smelled marijuana. On the contrary, Nathan Hellberg's testimony confirms the boys smoked marijuana shortly before Victoria Clemens arrived, and no evidence has been introduced showing any smell of marijuana would have dissipated.

No genuine issue of fact exists as to whether Victoria Clemens smelled marijuana; therefore, Officer Clemens had probable cause to detain and search the boys in the park. Accordingly, summary judgment is granted as to Plaintiff's claim for illegal detention and search. Further, as no

---

[1] Victoria Clemens testified that she misplaced the "roach" and therefore it was not logged into evidence (V. Clemens Depo. at pp.12-13).

8

constitutional violation exists, the Court need not discuss the remaining factors in the qualified immunity analysis.

### 3. Illegal Arrest

Next, Plaintiff claims Michael was illegally arrested without a warrant or probable cause to believe he had committed a crime.

"Today it is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003).

> For a police officer to have probable for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense."

*Id.* (citations omitted). Probable cause only requires the "probability of criminal activity." *Id.* (citations omitted). Whether there is probable cause is for a jury to decide, "unless there is only one reasonable determination that is possible." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003).

The record before the Court clearly reflects that Victoria Clemens had probable cause to arrest Michael for possession and use of marijuana (Ohio Rev. Code § 2925.11). Most persuasively, while in the park, one of the boys admitted to Officer Clemens they had been smoking marijuana (Phlipot Depo. at p. 11; V. Clemens Depo. at p. 13; Hellberg Depo. at p. 9). Further, the search revealed drug paraphernalia: one of the boys had a pipe, rolling papers, and a lighter in his possession (V. Clemens Depo. at p. 13). Finally, Officer Clemens testified that she found a warm roach on the ground near the boys. *Id.*

9

Based on the totality of the facts and circumstances present at the time of the arrest, only one reasonable determination was possible: that the boys had recently possessed and used marijuana. Accordingly, Victoria Clemens had probable cause to arrest Michael. Further, since a warrantless arrest for a misdemeanor offense, such as this, does not violate the Fourth Amendment if made with probable cause, summary judgment is granted as to Plaintiff's claim for illegal arrest. As the manner of Plaintiff's arrest is not a constitutional violation, the Court need not discuss the remaining factors in the qualified immunity analysis. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557, 149 L. Ed.2d 549, 577, (2001).

**4.  Excessive Force**

Plaintiff next claims that Officer George Clemens used excessive force in violation of the Fourth Amendment when he restrained Michael at the police station and removed his hat.

Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard; Plaintiff must show that the actions of the Defendants were unreasonable. *Scott v. Clay County*, 205 F.3d 867, 876 (6th Cir. 2000), *cert. denied*, 121 S. Ct. 179 (2000) (citing *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989)).

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment . . . .
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham v. Connor*, 490 U.S. at 396-97 (internal citation omitted). The factors considered in assessing a constitutional excessive force claim include the particular facts and circumstances of each case, the severity of the crime, the threat posed by the suspect, and whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

Defendants contend the removal of Michael's hat was entirely reasonable under the circumstances. Plaintiff, on the other hand, claims George Clemens had knowledge of Michael's pre-existing neck condition and, therefore, the manner of removing the hat was unreasonable under the circumstances. In support, Plaintiff cites *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1992). In *Walton*, the plaintiff was pulled over and arrested on her way home from receiving treatment on a sore shoulder. Plaintiff begged the arresting officer not to handcuff her because of her sore shoulder, but the officer handcuffed her regardless. The *Walton* court held that a genuine issue of material fact existed as to whether the officer knew plaintiff had an injured shoulder and therefore, the court could not determine the reasonableness of the officer's conduct. *Id*. at 1342.

In the instant action, a genuine issue of material fact exists as to the reasonableness of George Clemens's conduct. First, an issue of fact exists as to the manner in which Officer Clemens removed Michael's hat. Clemens testified that Michael was wearing his hat with the brim facing forward, and when he pulled the hat Michael's head did not move (G. Clemens Depo. at pp. 91-92). Conversely, Michael contends his hat was on backwards, and Officer Clemens ripped the hat off, causing Michael's neck to snap backwards and causing him to cry (Wilhelm Depo. at pp. 47-48). Robbie Phlipot testified that Officer Clemens ripped the hat back and forth and side to side before finally removing it (Phlipot Depo. at p. 19), and Nathan Hellberg testified it took Clemens roughly 30 seconds to remove the hat (Hellberg Depo. at p. 20). This multi-faceted testimony creates a genuine issue of material fact as to hat removal.

11

More importantly, a genuine issue of material fact exists as to whether George Clemens had knowledge of Michael's pre-existing medical condition before removing the hat. George Clemens testified that at the time of the incident at the police station, he had no knowledge of Michael's medical condition (G. Clemens Depo. at pp. 100-02). Further, Clemens claims he only learned of Michael's condition several months after the incident. *Id.* Robbie Phlipot, however, claims he told Officer Clemens to "look out, he has a bad brain stem" (Phlipot Depo. at p. 22), and both Michael and Nathan Hellberg testified Hellberg told Clemens to "be careful" (Wilhelm Depo. at 62; Hellberg Depo. at p. 27). Michael's father, Michael Wilhelm, Sr., claims that in a July 2002 conversation, he personally informed George Clemens of Michael's recovery from surgery, as well as his significant post surgery restrictions[2] (Wilhelm Aff. at ¶ 4). Finally, Wilhelm, Sr., claims that Michael's condition was common knowledge in Antwerp because of community fundraising efforts to help subsidize the cost of Michael's surgery. *Id.*

These issues of fact are material to a determination of whether George Clemens's actions were reasonable; therefore, summary judgment is not appropriate as to Plaintiff's claim of excessive force in violation of the Fourth Amendment of the U.S. Constitution.

Further, George Clemens is not entitled to summary judgment as to the issue of qualified immunity. It is well-settled that the right to be free from excessive force is a clearly established constitutional right. *Holt v. Artis*, 843 F.2d 242, 246 (6th Cir. 1988). In *Walton*, the Sixth Circuit noted that although this right is clearly established, where a genuine issue of material fact exists as to whether an officer used excessive force, summary judgment is properly denied as to the issue of

---

[2] George Clemens contends he has no recollection of this conversation (G. Clemens Aff. at ¶ 14).

12

qualified immunity. *Walton*, 995 F.3d at 1342. Accordingly, summary judgment is denied as to George Clemens's claim of qualified immunity.

**C.     Claims against the Village of Antwerp**

**1.     Municipal Liability under § 1983**

The Supreme Court has held that "a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs*. 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978). Rather, a municipality may be liable under §1983 for the constitutional torts of its agents only when they are committed pursuant to a city "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id*. at 694. "[I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed.2d 626, 639 (1997).

**2.     Failure to Train**

Plaintiff contends that the Village of Antwerp, through Joyce Carr, failed to adequately train and supervise its police officers. To maintain this claim, Plaintiff must establish not only that a governmental policy or custom caused the alleged injury, *Monell*, 436 U.S. at 690-91, but also that the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed.2d 412 (1989). "[A] municipality can be found liable under §1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under §1983." *Id*. at 385. "Allegations that a particular officer was

13

improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) (citing *Canton*, 489 U.S. at 390-91).

> Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under §1983. As Justice Brennan's opinion in *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484, 89 L. Ed.2d 452, 106 S. Ct. 1292 (1986) (plurality) put it: "Municipal liability under §1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. See also *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 85 L. Ed.2d 791, 105 S. Ct. 2427 (opinion of Rehnquist, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality -- a "policy" as defined by our prior cases -- can a city be liable for such a failure under §1983.

*Canton*, 489 U.S. at 389. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregard a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "A showing of simple or even heightened negligence will not suffice." *Id*. at 407.

Plaintiff has offered no evidence demonstrating a Village custom or policy of inadequate training or supervision of its police officers, let alone evidence showing a "deliberate indifference" to the constitutional rights of the citizens of the Village. Accordingly, summary judgment is granted as to Plaintiff's failure to train and supervise claim.

### 3. Failure to Adequately Screen

Next, Plaintiff contends that the Village of Antwerp, through Joyce Carr, failed to adequately screen George Clemens prior to employing him. Plaintiff argues that the act of failing to screen George Clemens constitutes a "policy or custom" sufficient to impose municipal liability under §1983.

14

Under §1983, a municipality can be held liable for a single decision "only where the evidence that the municipality [has] acted and that the plaintiff [has] suffered a deprivation of federal rights also [proves] fault and causation." *Brown*, 520 U.S. at 405. As with failure-to-train cases, the plaintiff must prove that the municipality exercised a deliberate indifference to the risk that a protected right would be violated. *Id*. at 411. But hiring decisions are to be given special treatment: "Cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause." *Id*. at 415. In order to prove a hiring decision was made with "deliberate indifference," the plaintiff must show that had the municipality adequately screened the employee, it would have been "highly likely" that "[the] officer [would] inflict the particular injury suffered by the plaintiff." *Id*. at 412.

In the instant action, Plaintiff claims that Carr failed to contact George Clemens's former employer, the Village of Paulding, which terminated his employment as a police officer after eight separate occasions of discipline (Memorandum in Opposition, Doc. No. 30, at p. 13). Plaintiff, however, fails to provide any evidence that *had* Carr contacted the Village of Paulding, she would have discovered that George Clemens would likely use excessive force or otherwise violate the constitutional rights of the citizens of Antwerp. It does not appear that Clemens was ever disciplined for the use or misuse of force.

Plaintiff further contends that George Clemens's prior convictions for misdemeanor assault, criminal trespass, and driving under the influence of alcohol should have "tipped off" Carr. While his prior convictions may make George Clemens a peculiar choice for a position as a police officer, they are not sufficient to impose liability on the Village.

In *Brown*, the Supreme Court was faced with a strikingly analogous situation. There, the county sheriff hired a deputy who subsequently used excessive force while making an arrest. The deputy's criminal record revealed multiple driving infractions and misdemeanor convictions for public drunkenness, assault, battery, and resisting arrest. *Id*. at 401-02. The court held, based on those convictions, that the plaintiff's claim failed as a matter of law because the sheriff and county were not deliberately indifferent to the plaintiff's federal constitutional rights:

> The fact that [the deputy] had pleaded guilty to traffic offenses and other misdemeanors may well have made him an extremely poor candidate for reserve deputy. Had [the sheriff] fully reviewed [the deputy's] record, he might have come to precisely that conclusion. But unless he would necessarily have reached that decision because [the deputy's] use of excessive force would have been a plainly obvious consequence of the hiring decision, [the sheriff's] inadequate scrutiny of [the deputy's] record cannot constitute "deliberate indifference" to respondent's federally protected right to be free from a use of excessive force.

*Id*. at 414. Here, George Clemens's criminal record is similar to the deputy in *Brown*. Just as the deputy's assault conviction was not sufficient to impose liability in Brown, Clemens's record is not sufficient to impose liability here. Had Joyce Carr adequately reviewed George Clemens's criminal record, it would not have been "plainly obvious" that he would use excessive force. Accordingly, Joyce Carr did not act with deliberate indifference to Plaintiff's right to be free from excessive force, and summary judgment is granted as to Plaintiff's failure-to-screen claim.

### Plaintiff's State-Law Claims

Plaintiff also contends that Defendants committed several violations of Ohio law, including false arrest, false imprisonment, assault, battery, and various violations of the Ohio Constitution.

16

**A.     Claims against the Village of Antwerp**

Ohio Revised Code §2744.02(A)(1) provides that political subdivisions are not liable for damages for "injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental . . . function." Ohio Rev. Code §2744.02(A)(1). Unless one of the five exceptions to political subdivision immunity set forth in Ohio Rev. Code §2744.02(B)(1)-(5) applies, the municipality is immune from suit. *Campbell v. Burton*, 92 Ohio St.3d 336, 343, 750 N.E.2d 539 (2001).

Plaintiff has introduced no evidence indicating that an exception to municipal immunity applies in the instant action. Indeed, Plaintiff did not even address this issue in his Memorandum in Opposition. Accordingly, summary judgment is granted on all state-law claims alleged against the Village of Antwerp.

**B.     Claims against the Individual Defendants**

  **1.     Political Subdivision Employee Immunity**

Defendants George Clemens, Victoria Clemens, and Joyce Carr claim that they are immune from liability for state-law claims under Ohio Revised Code §2744.03(A)(6). That section provides immunity to a city employee from "a civil action brought . . . to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function," unless the employee acted outside the scope of his employment, acted "with malicious purpose, in bad faith, or in a wanton or reckless manner," or unless "liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code. §2744.03(A)(6)(a)-(c).

17

Plaintiff contends that §2744.03(A)(6) immunity is improper because the individual defendants each acted with malice or recklessness. There is no evidence that either Victoria Clemens or Joyce Carr acted recklessly or with malice. Accordingly, §2744.03(A)(6) immunity applies and summary judgment is granted as to all state-law claims against Victoria Clemens and Joyce Carr.

### 2. Claims against George Clemens

Plaintiff contends that George Clemens is not entitled to §2744.03(A)(6) immunity because he acted with a malicious purpose or acted recklessly. "Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified." *Caruso v. State*, 136 Ohio App.3d 616, 620, 737 N.E.2d 563 (2000) (citing *Jackson v. Butler Cty. Bd. of Cty. Comm'rs.*, 76 Ohio App. 3d 448, 453-454, 602 N.E.2d 363 (1991)). An act is committed recklessly if it is done "with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent." *Caruso*, 136 Ohio App.3d at 621 (*citing Hackathorn v. Preisse*, 104 Ohio App. 3d 768, 771, 663 N.E.2d 384 (1995)).

As discussed above, a genuine issue of material fact exists as to (1) the manner in which George Clemens removed Michael's hat, and (2) whether George Clemens had knowledge of Michael's pre-existing medical condition at the time he removed the hat. If a reasonable jury could conclude that George Clemens had knowledge of Michael's medical condition but chose to aggressively remove the hat, it could likewise find this action was committed either recklessly or with a malicious purpose. Indeed, the crux of Plaintiff's excessive force claim is that the removal of Michael's hat was reckless in light of George Clemens's alleged knowledge of Michael's condition. Accordingly, a genuine issue of material fact exists as to this issue, and summary judgment is denied

18

on the issue of George Clemens's immunity relating to the removal of Michael's hat. Clemens is immune, however, from all claims *not* arising out of his removal of the hat.

The only state-law claims arising from George Clemens's removal of the hat are assault, battery, and excessive force in violation of the Ohio Constitution. As to the constitutional claim, the Ohio Supreme Court has held that Section 14, Article I of the Ohio Constitution affords the same protections as the Fourth Amendment and as such, the analysis is the same. *State v. Robinette*, 80 Ohio St.3d 234, 238, 685 N.E.2d 762 (1997). Thus, as a genuine issue of material fact exists as to Plaintiff's Fourth Amendment excessive force claim, one exists as to the Ohio constitutional claim as well. Accordingly, summary judgment is denied as to Plaintiff's claim for excessive force in violation of the Ohio Constitution.

Further, summary judgment is denied as to Plaintiff's assault and battery claims against George Clemens. Defendants claim that police officers are not liable for the torts of assault and battery when they use reasonable force to detain a suspect. *See Schweder v. Baratko*, 103 Ohio App. 399, 143 N.E.2d 486 (1957); *Drolesbaugh v. Hill*, 64 Ohio St. 257, 60 N.E. 202 (1901). While this may be true, a genuine issue of material fact exists as to whether the force used by George Clemens was in fact reasonable. Accordingly, summary judgment is properly denied. *See Lucijanic v. City of Columbus*, Case No. 2:04-CV-751, 2006 U.S. Dist. LEXIS 19090, at *19 (S.D. Ohio April 13, 2006) ("The genuine issues of fact which preclude summary judgment for defendant Ball on the §1983 excessive use of force claim also preclude summary judgment on plaintiff's assault and battery claims under Ohio law.").

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. No. 13) is granted in part and denied in part. Summary judgment is denied as to Plaintiff's claims for excessive force in violation of the U.S. and Ohio Constitutions, assault, and battery against Defendant George Clemens. Summary judgment is granted as to all other claims and as to all other Defendants.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 13, 2006